## Feinstein v. Siskin et al.

*David H. Kubert*, for complainant.
*Harry A. Rutenberg*, for respondents.

BLUETT, J., June 23, 1949.—This is a bill in equity asking for specific performance of agreement to sell real estate, in accordance with an option to purchase in a lease, and that defendants be restrained from proceeding with any action seeking to terminate or forfeit the lease.

The bill alleges that on March 1, 1948, complainant paid $5,850 to defendants for the purchase of defendants' grocery business at 2172 N. Dover Street, Phila-

delphia. A lease for said premises was entered into between the parties for a term of five years from March 1, 1948, at a monthly rental of $80, payable on the first day of each month. The lease also contained an option to complainant to purchase the premises within two years for the price of $7,500. Complainant and his family moved into the premises and paid the rent for March, April and May, 1948, by checks delivered to defendants. On June 1, 1948, for June rent complainant delivered his check to defendants for $80, which was accepted. This check did not clear the bank and was returned to defendants for "insufficient funds." Defendants did not immediately notify complainant of the return of the check, but on Saturday, June 12, 1948, complainant received a letter from defendants' counsel demanding that complainant quit the premises within 48 hours because the rent due for June was not paid.

On Monday, June 14, 1948, complainant exercised in writing his right of option to purchase. On June 16, 1948, complainant sent to defendants another check for $80 for the June rent, which was returned in a letter from defendants' counsel on June 21, 1948, advising that the rent could not be accepted, and that on June 18, 1948, judgment had been entered in an amicable action in ejectment as of C. P. No. 4, June term, 1948, no. 1487. In this action, on August 25, 1948, the court opened the judgment and let defendant therein (complainant in this case) into a defense. No other action has been taken on this judgment. On July 1, 1948, complainant tendered cash in payment of rent for June and July, which was refused by defendants. Since August 12, 1948, by agreement of counsel, monthly payments have been made for use and occupation of the premises, without prejudice to either party.

On September 13, 1948, an hour for settlement was fixed at the Commonwealth Title Company in Philadelphia to make the settlement under complainant's exercise of the option to purchase, and defendants were notified thereof, but defendants did not attend the settlement. Complainant avers that at all times he has been ready, willing and able to perform his obligations under the option agreement.

The answer of defendants admits all the facts alleged, but avers that defendants never recognized that there was any option existing, as the letter of termination of the lease of June 12, 1948, terminated the lease and the option therein mentioned.

### Discussion

The facts in the case are not in dispute.

The real question before the trial judge is whether or not the option could be exercised by complainant after he had received the letter terminating the lease. If the option were still alive and valid, complainant is entitled to a specific performance under the terms thereof.

The letter of termination of the lease was sent for an alleged default in the payment of rent due June 1, 1948, but was this an actual default? The lease provided that the rent should be paid on the first day of each month in "lawful money of the United States." Defendants may be considered to have waived this provision if they had accepted rent by checks for March, April and May, which would not ordinarily be paid until a day or two following the receipt when they had cleared the bank and actually been added to defendants' account. So that by accepting such checks in payment defendants had waived the right to receive "lawful money of the United States" on the first of each month. Before defendants could insist upon exact performance in this respect, it would have been neces-

sary for them to give notice that this would be required. Defendants did not do this and did not give notice to complainant of the return of the check for the June rent until June 12, 1948, and did not give any opportunity to complainant to make good in cash the check which had been so returned. The letter advising that the check had not been cashed and stating that the lease was terminated, was not received until June 12, 1948, but judgment in the amicable action was not had by defendants until June 18, 1948. In the meantime, on June 16, 1948, complainant had sent another check to defendants for the June rent. As defendants, by their conduct, had waived the right to receive the rent in cash on the first of the month, the sending of another check on June 16, 1948, was within a reasonable time, under the circumstances, and defendants were obliged to receive it in payment of the June rent. Even if this were not so, complainant had exercised his right of option before the amicable action in ejectment was started, which might be considered as an attempt to formally terminate the lease.

As complainant had paid $5,850 for the purchase of the grocery business, it would have been fair and equitable for defendants to give him a chance to make the check good before they took any action to terminate the lease. It would seem that defendants were only waiting for some slight infraction of the terms of the lease in order that they could get back the premises, and the business as well, and keep for themselves the cash paid for the business by complainant only three months before. It would be unconscionable to permit this to be done. In effect, this would be a fraud on complainant. If there were a forfeiture it should be conditioned upon the repayment by defendants of the amount of money complainant had paid for the business. If complainant were obliged to surrender his tenancy without the return of the $5,850, his loss would

be wholly disproportionate to his failure to pay the rent in cash on June 1st, especially when he was able and willing to continue his payment for rent and actually did so later. An enforcement of a forfeiture might also stop the livelihood of complainant and his family. To permit such a forfeiture would be inequitable, unjust and oppressive. Equity may prevent the assertion of a legal right which would be unjust or oppressive.

Assuming, however, for the purpose of argument, that defendants had properly terminated the lease, it would not necessarily terminate the option. Options to purchase real estate in leases are either independent, or an integral part of the lease and fall with the lease itself.

Generally in Pennsylvania options similar to the one in suit are viewed as independent contracts or agreements separate from the lease in which they are contained. Where the option in a lease is duly exercised, the landlord-tenant relationship ceases and the parties are in a vendor-vendee relationship. The contract of sale relates back to the date of the option. An equitable interest in real estate has become vested.

The option in the case before me is an independent one. There was consideration for it. It was to be exercised within a period of two years, whilst the lease itself was for a term of five years. The option was exercised by complainant within the two-year period. An extension of the lease at the expiration of the five-year term would not extend the option too, for the option would have expired long before the end of the five-year term of the lease. The option was part of the lease only for the purpose of describing the property and the persons. The option was no part of the demise, and would not have been necessary in a continuance of the tenancy or leasehold. . . .

*Decree Nisi*

And now, to wit, June 23, 1949, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That within 30 days specific performance of the option agreement in the lease of March 1, 1948, is hereby granted, and defendants are ordered to convey premises 2172 N. Dover Street, Philadelphia, to complainant, upon payment of the price stated in the said option agreement

2. That defendants are enjoined from proceeding with the amicable action in ejectment, as of C. P. No. 4, June term, 1948, no. 1487, or with any other proceeding seeking a forfeiture and termination of the lease of March 1, 1948.

3. That defendants pay the costs of this proceeding.

The prothonotary will enter a decree nisi as above set forth, and will notify counsel thereof, and of the filing of these findings and conclusions, and that if exceptions are not filed thereto within 10 days from the receipt of said notice, a decree absolute will be entered.